**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHUBB CAPITAL I**
**LIMITED ET AL.**                          **CIVIL ACTION**


**VERSUS**                                   **NO: 23-5806**


**NEW ORLEANS CITY**                         **SECTION: "H"**


## ORDER AND REASONS

Before the Court are Plaintiffs' Motion for Preliminary Injunction (Doc. 3); Defendant's Motion to Compel Arbitration and Stay Litigation (Doc. 31); and Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion to Compel Arbitration (Doc. 57). For the following reasons, Plaintiffs' Motion for Preliminary Injunction is **GRANTED**; Defendant's Motion to Compel Arbitration and Stay Litigation is **DENIED**; and Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion to Compel Arbitration is **DENIED**.


## BACKGROUND

This case arises out of a contract dispute between the Crescent City Aviation Team ("CCAT") and Defendant the City of New Orleans by and through the New Orleans Aviation Board ("NOAB"). CCAT is a joint venture composed of Leo A. Daly Company ("Daly") and Atkins North America, Inc. ("Atkins"). NOAB and CCAT contracted for CCAT's provision of "professional

1

engineering and architectural design and related services" for construction of the new terminal facility at the Louis Armstrong New Orleans International Airport ("the Design Services Contract").[1] The Design Services Contract contains an arbitration clause.

Plaintiffs are a group of insurers ("the Insurers") who provide professional liability insurance coverage to Daly and Atkins, with CCAT listed as an additional insured.[2] On June 30, 2023, NOAB filed an arbitration demand with the American Arbitration Association against CCAT, Daly, Atkins, and the Insurers, demanding over $51 million in damages for errors and omissions in CCAT's project work pursuant to the Design Services Contract, in addition to a 50% extracontractual penalty under Louisiana Revised Statutes § 22:1892. The Insurers submitted a written demand to NOAB for their dismissal from the arbitration because they are not parties to the Design Services Contract, and their insurance contracts do not contain arbitration clauses. NOAB, however, refused to dismiss the Insurers.

On October 5, 2023, the Insurers filed suit in this Court, seeking (1) a declaratory judgment that NOAB has no right to demand arbitration from them and the Insurers should not be parties in the Arbitration, and (2) a preliminary and permanent injunction enjoining NOAB's prosecution of the Arbitration against them.[3] NOAB later filed a Third-Party Complaint against Daly, Atkins, and CCAT, asserting claims for negligence, breach of contract,

---

[1] Doc. 26 at 4.

[2] Plaintiffs Chubb Capital I Limited, RenaissanceRe Corporate Capital (UK) Limited, Brit UW Limited, and Swiss Re International SE had a contract of professional liability insurance with Daly for the period of July 1, 2018 to July 1, 2019. Plaintiffs Catlin Underwriting Agencies Limited, Scor Global P&C SE, AIG Europe Limited, Starr Underwriting Agents Limited, Arch Insurance Canada Ltd., XL Reinsurance America Inc., Everest Insurance Company of Canada, Temple Insurance Company, and Aviva Insurance Company of Canada had a contract of professional liability insurance with Atkins for the period of April 30, 2020 to April 30, 2021.

[3] Doc. 1 at 10.

2

and solidary liability of members of a joint venture.[4] Now before the Court are Plaintiffs' Motion for Preliminary Injunction; Defendant's Motion to Compel Arbitration and Stay Litigation; and Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion to Compel Arbitration.[5] Each motion is opposed.[6]

## LAW AND ANALYSIS

### 1. *Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion to Compel Arbitration (Doc. 57)*

Plaintiffs move this Court to strike as untimely Defendant's Reply Brief in Support of its Motion to Compel Arbitration. On January 19, 2024, Defendant New Orleans City filed a Motion to Compel Arbitration, setting a submission date of February 14, 2024.[7]  Pursuant to Local Rule 7.5, effective January 1, 2024, a movant may file a reply brief in support of their motion "no later than 4:00 p.m., two working days before the noticed submission date." Defendant, however, filed a reply brief in support of its Motion to Compel Arbitration on the submission date.[8] Defendant argues that it interpreted this Court's order setting oral argument on its motion to compel arbitration as extending the deadline to file a reply brief to February 14, 2024.[9]

The Court, in setting Defendant's motion for oral argument, instructed the parties that "this order shall not be interpreted to alter the briefing deadlines for Defendant's Motion to Compel Arbitration and Stay Litigation

---

[4] Doc. 21.
[5] Docs. 3, 31 & 57.
[6] Docs. 26, 38 & 59.
[7] Doc. 31.
[8] Doc. 40.
[9] Doc. 59.

(Doc. 31) . . . , and all briefs shall be submitted by February 14, 2024."[10] Accordingly, the submission date remained set as February 14, 2024, and pursuant to Local Rule 7.5, any reply brief, filed without leave of Court, must have been filed by 4:00 p.m. two working days prior.[11] Defendant's reply brief, filed without leave of court, was therefore untimely pursuant to Local Rule 7.5.

The Court, however, exercises its discretion and declines to strike Defendant's reply brief from the record, as the Insurers have failed to demonstrate—or even allege—any prejudice.[12] Moreover, the reply brief raises arguments that were made and responded thereto at oral argument held on February 16, 2024. In the event the Court found Defendant's reply brief untimely, Defendant asked this Court for leave to file.[13] Accordingly, Plaintiffs' Motion to Strike is **DENIED**, and Defendant's request for leave to file a reply is **GRANTED**.

### 2. *Plaintiffs' Motion for Preliminary Injunction (Doc. 3)*

The Insurers "seek a preliminary injunction to enjoin the prosecution of an arbitration against [them]" because they did not agree to arbitrate any claims asserted by NOAB, and their policies with Daly, Atkins, and CCAT do not contain arbitration clauses.[14] An applicant for preliminary injunctive relief

---

[10] Doc. 39.

[11] Prior to the January 1, 2024 effective date of the newest Eastern District of Louisiana's Local Rules, this Court routinely granted a movant's motion for leave file a reply brief if such brief was filed on or before the submission date. The Local Rules now permit filing of a reply brief without leave of court two working days prior to the submission date. A movant may, nonetheless, move a court for leave to file its reply brief outside the deadlines set in the Local Rules.

[12] *See* Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 161–62 (5th Cir. 2006); Phillips v. Exact Sciences, No. 19-cv-0341, 2020 WL 419369, at *2 (W.D. La. Jan. 27, 2020).

[13] *See* Doc. 59 at 3. *See also* Fields v. Dollar Tree Stores, Inc., No. 3:18-CV-00567-HTW-LRA, 2019 WL 4855508 at *2 (S.D. Miss. Sept. 30, 2019) (denying a motion to strike a reply brief where the movant failed to "put forth any evidence that it has suffered prejudice from the untimeliness of [p]laintiff's responsive pleading").

[14] Doc. 3 at 2.

must show: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."[15] A preliminary injunction is an extraordinary remedy.[16] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[17] In the end, a preliminary injunction is treated as an exception rather than the rule.[18]

Defendant does not contest that the second, third, and fourth requirements for injunctive relief are met. "An injury is 'irreparable' only if it cannot be undone through monetary remedies."[19] Because "[b]eing compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm *per se*,"[20] the Court finds that the Insurers have carried their burden with respect to the irreparable injury requirement. Next, the Court finds that the irreparable harm the Insurers would suffer if forced to arbitrate claims absent an agreement outweighs any harm Defendant would suffer in potential litigation costs.[21] Last, the Court finds that granting the preliminary injunction would not disserve the public interest, as forcing a

---

[15] Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195–96 (5th Cir. 2003) (citing Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)).

[16] Miss. Power & Light Co. v. United Gas Pipe Line, Co., 760 F.2d 618, 621 (5th Cir. 1985).

[17] *Id.*

[18] State of Tex. v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975).

[19] Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981) (citing Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981); Parker v. Dunlop, 517 F.2d 785, 787 (5th Cir. 1975)).

[20] *See, e.g.*, J2 Res., LLC v. Wood River Pipe Lines, LLC, No. 4:20-CV-2161, 2020 WL 4227424 (S.D. Tex. July 23, 2020).

[21] Pershing LLC v. Bevis, No. 13-672-JJB-RLB, 2014 WL 1818098, at *5 (M.D. La. May 7, 2014) (citing Morgan Keegan & Co. v. Shadburn, 829 F. Supp. 2d 1141, 1153 (M.D. Ala. 2011)).

party who has not agreed to arbitrate a dispute to arbitrate would "'undermine the longstanding principle that arbitration is a consent-based process through which parties can decide for themselves where and how to resolve a specific set of potential disputes.'"[22] Accordingly, the Court turns to the Insurers' likelihood of prevailing on the merits.

To show a substantial likelihood of success on the merits, the Insurers must show that NOAB's claims against them are not arbitrable.[23] The Insurers argue that they did not agree to arbitrate the claims asserted by NOAB. While non-signatories may be compelled to arbitrate under various state-law theories, the Insurers further aver that these theories are inapplicable. Additionally, the parties dispute whether the Louisiana Direct Action Statute permits a direct-action plaintiff to demand arbitration from an insurer with which the plaintiff has no privity of contract.[24] The Court considers each of the Insurers' arguments in turn.

### A. Agreement to Arbitrate

In determining whether the parties have agreed to arbitrate, courts must apply state-law principles of contract.[25] Under Louisiana law, the four elements of a valid contract are: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose."[26] The Insurers assert that no consent was given to enter into an arbitration agreement.

---

[22] Pershing LLC v. Fulcrum Capital Holdings LLC, No. 1:20-CV-587-RP, 2020 WL 3883256 (W.D. Tex. July 9, 2020) (quoting Raymond James Fin. Servs., Inc. v. Cary. 709 F.3d 382, 388 (4th Cir. 2013)).

[23] *See* City of Meridian, Miss. V. Algernon Blair, Inc., 721 F.2d 525, 527 (5th Cir. 1983).

[24] LA. REV. STAT. § 22:1269.

[25] Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir. 2003).

[26] Provenza v. Cent. & Sw. Servs., Inc., 775 So. 2d 84, 89 (La. App. 2d Cir. 2000) (citing LA. CIV. CODE arts. 1918, 1927, 1966 & 1971).

To support a finding of consent, the court must determine whether there was a "meeting of the minds."[27] In *ULM Facilities*, the Louisiana Second Circuit Court of Appeal ordered a non-signatory insurer to arbitrate pursuant to an agreement between its insured and a contractor, where the insurance contract "offered no policy language opting out or stating that, if its insured agreed to arbitration of claims, [the insurer] would not participate."[28] Considering this lack of policy language and the "special circumstances" of the case, the Second Circuit found that the insurers "consented to the arbitration to which their respective insureds agreed."[29]

While the insurance contract in this case also lacks policy language stating that the Insurers would not participate in any arbitration its insureds agreed to, Defendant fails to explain what "special circumstances" are present in this case or otherwise explain how the Insurers consented to arbitration to which their insureds agreed.[30] Indeed, Defendant's opposition memorandum omits mention of the term "consent" entirely. Absent a finding of consent or a "meeting of the minds," this Court finds that the Insurers did not agree to arbitrate. Even so, non-signatories may be bound by an arbitration clause in certain circumstances.

---

[27] Adams v. JPD Energy, Inc., 46 So. 3d 751, 755 (La. App. 2d Cir. 2010).

[28] *ULM Facilities*, 151 So. 3d at 133.

[29] *Id.*

[30] Indeed, "[c]onsent may be given either expressly or by implication." Ill. Cent. Gulf. R.R. Co. v. Int'l Harvester Co., 368 So. 2d 1009, 1011 (La. 1979) (citing LA. CIV. CODE arts. 1780 & 1811). "Thus, except in those instances in which the statutory law creates a legal presumption, the mere silence of an offeree should not, in principle, be considered as involving acceptance on his part. His consent can result from silence, however, when combined with other facts or acts so as to imply or indicate his consent *unequivocally*." *Id.* at 1012 (emphasis added). In such cases, "it is left to the discretion of the judge to determine if consent is to be implied from the particular circumstances of the case." *Id.* Defendant has failed to demonstrate unequivocal consent. Additionally, while the Court notes that the insurance agreement referenced the Design Services Contract and listed NOAB as an additional insured, the insurance agreement does not contain an arbitration clause.

### B. Compelling Non-Signatories to Arbitrate

In determining whether non-signatories may nevertheless be bound by an arbitration clause, state law applies.[31] The Design Services Contract provides that Louisiana law governs.[32] Generally, "a party cannot be required to submit to arbitration to any dispute that he has not agreed to submit."[33] There are, however, limited circumstances where a contract may be enforced against a non-signatory.[34] "Six theories for binding a non[-]signatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary."[35] The Court considers each in turn.

#### a. Incorporation by Reference

"The incorporation of an arbitration clause by reference to another written contract is a suitable method of evidencing the parties' intent to arbitrate as long as the arbitration clause in the contract that is referred to has a 'reasonably clear and ascertainable meaning.'"[36] Thus, a non-signatory "may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the non-signatory which incorporates the existing arbitration clause."[37] Here, however,

---

[31] Arthur Andersen, LLP v. Carlisle, 556 U.S. 624, 630–31 (2009).

[32] Doc. 3-3 at 14 ("This Agreement shall be governed by the laws of the State of Louisiana.").

[33] Ciaccio v. Cazayoux, 519 So. 2d 799, 804 (La. App. 1st Cir. 1987).

[34] *Arthur Andersen*, 556 U.S. at 630–31.

[35] Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 356 (5th Cir. 2003) (citing Thomson–C.S.F., S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995); E.I. DuPont de Nemours & Co. v. Rhone Poulenc, 269 F.3d 187, 195–97 (3d Cir. 2001)). *See also* Traders' Mart, Inc. v. AOS, Inc., 268 So. 3d 420, 427 (La. App. 2d Cir. 2019) (applying the theories set forth in *Bridas*); Prasad v. Bullard, 51 So. 3d 35 (La. App. 5th Cir. 2010) (same).

[36] Dufrene v. HBOS Mfg., LP, 872 So. 2d 1206, 1211 (La. App. 4th Cir. 2004) (citing Woodson Constr. Co. v. R.L. Abshire Constr. Co., 459 So. 2d 566, 569 (La. App. 3d Cir. 1984); Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So. 2d 11, 13 (La. App. 5th Cir. 1993)).

[37] *Thomson–C.S.F.*, 64 F.3d at 777.

the Insurers do not seek to compel arbitration against a party to the arbitration agreement; they seek to avoid it. Moreover, the Insurers do not assume the obligations and privileges of its insureds in the contract of insurance.[38] The Court therefore finds the incorporation by reference theory inapplicable.

### b. Assumption

"In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."[39] The non-signatory's conduct must manifest a clear intent to arbitrate.[40] The Insurers argue that they have not manifested a clear intent to arbitrate the dispute with NOAB and that their "only action to date vis-à-vis the NOAB Arbitration was to write a letter through counsel to NOAB demanding the cessation of arbitration proceedings against them."[41] Defendant fails to point to any subsequent conduct by the Insurers that would indicate a clear intent to arbitrate disputes arising out of the Design Services Contract. Accordingly, this theory does not apply.

---

[38] *See* Doc. 3-5 at 12. The Design Services Contract requires that its contractors obtain a policy of liability insurance. However, Louisiana courts finding incorporation by reference have generally based that finding upon an explicit incorporation clause evidencing a clear intent to arbitrate. *See, e.g.*, Woodson Constr. Co., Inc. v. R.L. Abshire Constr. Co., Inc., 459 So. 2d 566, 569 (La. App. 3d Cir. 1984) (finding incorporation by reference where the contract provided that the "Subcontractor is required to complete the above described work according to the terms and conditions of that certain contract by and between" the parties who agreed to arbitrate Bartley, Inc. v. Jefferson Par. Sch. Bd., 302 So. 2d 280, 282 n.3 (La. 1974) (finding incorporation by reference where the contract provided that "[a]ll of these Plans, Specifications, Addenda, Proposal, and said Agreement are made part of this Agreement between [the parties] just as though all were annexed thereto"). *See also* Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So. 2d 11, 13–14 (La. App. 5th Cir. 1993) (finding the arbitration agreement incorporated by reference where the arbitration agreement referred to the other contract by naming the parties thereto and attaching a copy of the contract).

[39] *Thomson–CSF*, 64 F.3d at 777.

[40] *Id.*

[41] Doc. 3-1 at 14.

### c. Agency

Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."[42] "An agency relationship may be demonstrated by 'written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority).'"[43] Therefore, if CCAT signed the Design Services Contract in its capacity as the Insurers' agent, the Insurers would be bound by the Design Services Contract's arbitration clause. The Insurers, however, aver that their actions did not in any way manifest consent for CCAT, Daly, or Atkins to bind them to arbitration. Because NOAB fails to point to any conduct by the Insurers that tend to show that CCAT had authority to bind them to the arbitration provision of the Design Services Contract, agency theory does not apply.

### d. Veil-Piercing/Alter Ego

"Under the alter ego doctrine, a corporation may be bound by an agreement entered into by its subsidiary regardless of the agreement's structure or the subsidiary's attempts to bind itself alone to its terms, 'when their conduct demonstrates a virtual abandonment of separateness.'"[44] "The corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the

---

[42] *Bridas*, 345 F.3d at 356–57 (quoting Restatement (Second) of Agency § 1(1) (1958)).

[43] *Id.* (quoting Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170, 181 (5th Cir. 1989)).

[44] *Id.* (quoting *Thomson–C.S.F.*, 64 F.3d at 777).

veil."[45] Because the Insurers do not own CCAT, the alter ego theory does not apply.

### e. Equitable Estoppel

A court's use of equitable estoppel is within its discretion.[46] In the context of arbitration, there are two theories of equitable estoppel: intertwined claims and direct benefits.[47] Intertwined claims estoppel "applies only to prevent a signatory from avoiding arbitration with a non[-]signatory when the issues the non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. The reverse is *not* also true."[48] In this case, Defendant, a signatory to the Design Services Contract, seeks to estop the Insurers, as non-signatories, from avoiding arbitration. Because a "signatory may not estop a non[-]signatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party," the intertwined claims theory of equitable estoppel does not apply.[49]

The direct benefits theory of estoppel applies when a non-signatory "knowingly exploits the agreement containing the arbitration clause."[50] For this theory to apply, the non-signatory must have brought a suit against a signatory premised in part upon the agreement.[51] Here, the Insurers have not

---

[45] *Id.* at 359 (citing Am. Fuel Corp. v. Utah Energy Dev't Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997)).

[46] *Id.* at 360 (citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 528 (5th Cir. 2000)).

[47] *See id.* at 360–62; *Traders' Mart*, 268 So. 3d at 427.

[48] *Traders' Mart*, 268 So. 3d at 427 (citing *Bridas*, 345 F.3d at 361; Greene v. Chase Manhattan Auto. Fin. Corp., No. Civ.A. 03-2179, Civ.A. 03-2640, 2003 WL 22872102 (E.D. La. Dec. 3, 2003); *Grigson*, 210 F.3d 524; Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., 871 So. 3d 380 (La. App. 4th Cir. 2004)).

[49] *See id.* (citing *Bridas*, 345 F.3d at 361; *Greene*, 2003 WL 22872102; *Grigson*, 210 F.3d 524; *Lakeland Anesthesia*, 871 So. 3d 380).

[50] *Id.* at 361–62 (quoting *DuPont*, 269 F.3d at 199).

[51] *Id.* at 362.

sued CCAT or NOAB under the agreement and have not "exploited" the Design Services Contract to the degree that application of this theory requires.[52]

### f.  Third-Party Beneficiary

Third-party beneficiaries of a contract may be bound by the terms of an arbitration agreement.[53] "Under Louisiana law, a third-party beneficiary must be created by contract, known as a stipulation *pour autri*, and is never presumed."[54]  For this Court to find that the Insurers are third-party beneficiaries, it must be established that: "(1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee."[55]

In *Bridas S.A.P.I.C. v. Government of Turkmenistan*, however, the Fifth Circuit expressed reluctance to apply the third-party beneficiary theory where the third-party beneficiary did not file a claim against a signatory to the agreement or otherwise seek to enforce the terms of the agreement containing the arbitration clause.[56]  Here, the Insurers did not file a claim against the signatories or otherwise seek to enforce the terms of the Design Services Contract. Moreover, Defendant fails to establish that the Insurers are third-party beneficiaries of the Design Services Contract that contains the arbitration clause.[57] A review of the Design Services Contract reveals that they

---

[52] *See id.*

[53] *See id.* at 362–63; Billieson v. City of New Orleans, 863 So. 2d 557, 562–63 (La. App. 4th Cir. 2003).

[54] Johnson v. Am. Sec. Ins. Co., 650 F. Supp. 3d 483, 489–90 (E.D. La. 2023) (Vance, J.) (citing Joseph v. Hosp. Serv. Dist. No. 2 of Par. St. Mary, 939 So. 2d 1206, 1212 (La. 2006)).

[55] *Joseph*, 939 So. 2d at 1212.

[56] *Bridas*, 345 F.3d at 363. "Bridas has not brought to our attention a case where a third-party beneficiary has been bound to arbitrate a dispute, arising under an agreement to which it is not a party, that the third-party itself did not initiate in court." *Id.*

[57] In its motion to compel arbitration, Defendant argues that it is a third-party beneficiary because the Louisiana Direct Action Statute ("LDAS") provides that "all liability policies"

are not. Accordingly, the Court declines to apply third-party beneficiary theory to this case. No state-law theory to bind a non-signatory to an arbitration agreement applies in this case.

### C. Louisiana Direct Action Statute

The parties dispute whether the Louisiana Direct Action Statute ("the LDAS") requires third-party insurers to submit to binding arbitration where their insureds have agreed to arbitrate. In diversity cases, such as this, federal courts must apply state substantive law.[58] To determine Louisiana law, courts must look to the final decisions of the Louisiana Supreme Court.[59] Upon this Court's review, it appears the Louisiana Supreme Court has not yet addressed the precise issue before this Court.

"In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case."[60] "In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes."[61] "'Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana.'"[62] "Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that

---

are issued "for the benefit of all injured persons," including NOAB. Doc. 31-1 at 5. The full text of the statute is, however, enlightening, as the LDAS provides that "[i]t is the intent of this Section that all liability policies *within their terms and limits* are executed for the benefit of all injured persons . . . ." LA. REV. STAT. § 22:1269(D) (emphasis added). The liability policy's terms do not include an agreement to arbitrate.

[58] *In re* Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007).

[59] *Id.*

[60] *Id.*

[61] *Id. (*citing Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 197 (5th Cir. 2003); Prytania Park Hotel, Ltd. v. Gen Star Indem. Co., 179 F.3d 169 (5th Cir. 1999)).

[62] *Id.* (quoting *Prytania Park Hotel*, 179 F.3d at 169).

the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them."[63]

Defendant argues that the Louisiana Second Circuit Court of Appeal in *ULM Facilities* has answered the precise question before this Court and held that the LDAS requires third-party insurers to submit to binding arbitration where their insureds have agreed to arbitrate.[64] Thus, Defendant avers that this Court must order arbitration of NOAB's claims against the Insurers. This Court does not, however, find that *ULM Facilities* so holds. While citing the LDAS for the proposition that "[o]rdinarily, an injured person may sue an insurer directly,"[65] the Second Circuit ultimately found that the insurers "consented to the arbitration to which their respective insureds agreed."[66] The LDAS gives procedural rights to tort victims—those with no contract- or consent-based relationship with an insurer.[67] Thus, the Second Circuit's finding of "consent" suggests that the court found an agreement to arbitrate, not that the LDAS compelled arbitration.

And even if this Court found the holding in *ULM Facilities* to suggest that the LDAS requires third-party insurers to submit to arbitration, the Court is convinced that the Louisiana Supreme Court would hold otherwise.[68] The LDAS affords plaintiffs the right to bring a "direct action" against a tortfeasor's

---

[63] *Id.* (citing Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 261 (5th Cir. 2003)).

[64] *See* Univ. of La. Monroe Facilities, Inc. v. JPI Apartment Dev., 151 So. 3d 126, 133 (La. App. 2d Cir. 2014) [hereinafter "*ULM Facilities*"].

[65] *ULM Facilities*, 151 So. 3d at 133 (citing LA. REV. STAT. § 22:1269(B)(1)).

[66] *Id.*

[67] *See* Green v. Auto Club Group Ins. Co., 24 So. 3d 182, 184 (La. 2009) (citing Cacamo v. Liberty Mutual Ins. Co., 764 So. 2d 41, 43 (La. 2000)); Taylor v. Fishing Tools, Inc., 274 F. Supp. 666, 673 (E.D. La. 1967).

[68] While Defendant notes that the Louisiana Supreme Court denied writ, "[a] writ denial by th[e] Court has no precedential value." St. Tammany Manor, Inc. v. Spartan Bldg. Corp., 509 So. 2d 424, 428 (La. 1987).

insurer.[69] The statute does not, however, define "direct action" or "action" generally. Dictionaries define the term "action" as a "civil or criminal judicial proceeding"[70] or "the initiating of a proceeding in a court of justice by which one demands or enforces one's right."[71] The ordinary meaning of "action" therefore does not include arbitration. Additionally, arbitration is a consent-based process, and Defendant has failed to identify a single instance where the Louisiana legislature has mandated arbitration among private parties.[72] The Court would find difficulty holding that the Louisiana legislature has now implicitly done so by creating a procedural right of "action."

Moreover, § 22:1269 provides that any "direct action" brought against the insurer alone may be brought in a venue prescribed by Louisiana Code of Civil Procedure article 42.[73] The Code of Civil Procedure generally applies to judicial proceedings—not necessarily to alternative dispute resolution proceedings.[74] Thus, in creating the procedural right of direct action, the

---

[69] LA. REV. STAT. § 22:1269(B)(1) ("The injured person or his survivors or heirs . . . shall have a right of direct action against the insurer within the terms and limits of the policy[.]").

[70] *Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) (fourth definition).

[71] *Action*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/action (last updated Mar. 25, 2024).

[72] The Court notes that Louisiana Revised Statutes § 47:337.51.1(A)(1) provides for a "mandatory arbitration procedure" for tax assessments due at the taxpayer's election. Arbitration is therefore only mandatory for the tax collector if the taxpayer chooses to initiate such proceedings. Where, as here, the state legislature has provided for mandatory arbitration in clear terms, the Court would find difficulty holding that the legislature intended to mandate arbitration by enacting the LDAS.

[73] LA. REV. STAT. § 22:1269(B)(1). *See also* LA. CODE CIV. PROC. art. 41 ("Venue means the parish where an action or proceeding may properly be *brought and tried* under the rules regulating the subject." (emphasis added)).

[74] "Unless a mode of conducting the proceedings has been prescribed by the arbitration agreement or submission, or regulated by statute, arbitrators have general discretion as to the mode of conducting the proceedings and are not bound by formal rules of procedure and evidence, and the standard of review of arbitration procedures is merely whether a party to an arbitration has been denied a fundamentally fair hearing." *In re* Arbitration Between U.S. Turnkey Expl., Inc. & PSI, Inc., 577 So. 2d 1131, 1135 (La. App. 1st Cir. 1991) (citing Nat'l Post Office Mailhandlers v. U.S. Postal Serv., 751 F.2d 834 (6th Cir. 1985)). The

legislature clearly contemplated that such rights were created with respect to judicial actions alone. Defendant has failed to present any persuasive argument otherwise. Accordingly, the Court finds that the Louisiana Supreme Court would hold that the LDAS does not compel third-party insurers to submit to binding arbitration where their insureds have agreed to arbitrate but where the insurers have not.

Having considered all theories by which a non-signatory may be compelled to arbitrate pursuant to an arbitration agreement, the Court finds none applicable. The Court also finds the LDAS inapplicable. Accordingly, the Insurers have carried their burden in demonstrating a substantial likelihood of success on the merits by demonstrating that NOAB's claims against them are non-arbitrable. Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

### 3. *Defendant's Motion to Compel Arbitration and Stay Litigation (Doc. 31)*

Defendant moves this Court to compel arbitration of its claims against the Insurers. The question of arbitrability is governed by the Federal Arbitration Act ("FAA"), which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[75] A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[76] The Court must first determine whether the parties agreed to arbitrate the dispute.[77] This determination involves two separate inquiries: (1)

---

Louisiana Code of Civil Procedure may also govern administrative agency proceedings. *See* Bd. of Ethics in Matter of Monsour, 249 So. 3d 808, 810 (La. 2018).

[75] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

[76] JP Morgan Chase & Co. v. Conegie *ex rel*. Lee, 492 F.3d 596, 598 (5th Cir. 2007).

[77] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).

whether there is a valid agreement to arbitrate between the parties, and if so, (2) whether the dispute in question falls within the scope of that agreement.[78] The strong federal policy favoring arbitration applies "when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," but it does not apply "when determining whether a valid agreement exists."[79] If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitrable.[80]

The United States Supreme Court has held that a litigant who was not a party to an arbitration agreement may compel arbitration under the FAA "if the relevant state contract law allows him to enforce the agreement."[81] A non-party may also compel arbitration as a matter of substantive federal law when traditional principles of state law allow a contract to be enforced by or against nonparties.[82] The Court, however, found *supra* that the Insurers did not agree to arbitrate the claims asserted by NOAB and that none of the state-law theories for enforcing an agreement against a non-signatory apply. Accordingly, the first requirement to compel arbitration is not met, and Defendant's Motion to Compel Arbitration and Stay Litigation is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is **GRANTED**; Defendant's Motion to Compel Arbitration and Stay Litigation

---

[78] Sherer v. Green Tree Servicing, LLC, 548 F.3d 379, 381 (5th Cir. 2008).
[79] *Id.*
[80] Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).
[81] *Arthur Andersen*, 556 U.S. at 625.
[82] *Id.* at 631 (internal quotations omitted).

is **DENIED**; and Plaintiffs' Motion to Strike Defendant's Reply Brief in Support of its Motion to Compel Arbitration is **DENIED**.

 **IT IS FURTHER ORDERED** that Defendant New Orleans Aviation Board's arbitration demand against Plaintiffs Chubb Capital I Limited, Brit UW Limited, Swiss Re International SE, Catlin Underwriting Agencies Limited, Scor Global P&C SE, AIG Europe Limited, Starr Underwriting Agents Limited, Arch Insurance Canada Ltd., XL Reinsurance America Inc., Everest Insurance Company of Canada, Temple Insurance Company, Aviva Insurance Company of Canada, and RenaissanceRe Corporate Capital UK Limited in American Arbitration Association Case No. 01-23-002-9468 be enjoined pending final disposition of this matter or further order of the Court.

 New Orleans, Louisiana this 6th day of May, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**